OPINION
{¶ 1} Appellant Stanley E. Hoff appeals his conviction for violation of a civil protection order in the Municipal Court of Fairfield County. The relevant facts leading to this appeal are as follows.
 {¶ 2} On April 18, 2002, appellant was convicted in the Fairfield County Municipal Court of misdemeanor stalking. The stalking victim was appellant's then-wife, Jeanne Hutchinson. Appellant was therein sentenced to serve twenty-one days in jail, and was further placed on intensive supervised probation and ordered to have no contact with Jeanne.
 {¶ 3} Earlier, on February 8, 2002 the Fairfield County Domestic Relations Court issued a domestic violence civil protection order against appellant, which ordered, inter alia:
 {¶ 4} "RESPONDENT SHALL STAY AWAY FROM THE FAMILY OR HOUSEHOLD MEMBER(S) NAMED IN THIS ORDER. Respondent shall not be present within ___ (distance) of them, and shall refrain from entering any place where they may be found. This order to stay away includes, but is not limited to, the buildings, grounds, and parking lots of their residences, schools, businesses, places of employment, day care centers, and babysitters. If Respondent accidentally comes in contact with these family or household member(s) in any public or private place, Respondent must depart immediately."
 {¶ 5} On April 25, 2002 the Fairfield County Domestic Relations Court rendered a decree of divorce between appellant and Jeanne. Said court therein renewed its own prior civil protection order and further restrained appellant from being within 1000 feet of the presence of Jeanne.
 {¶ 6} As of May 1, 2002, appellant was residing in Pleasantville, Ohio, and Jeanne was residing in Rushville, Ohio, approximately 15 to 20 minutes driving time apart. At about 9 PM on that date, Jeanne was at her residence with her two minor children. A co-worker, Bill Burrows, was also present, helping Jeanne with repairs on an exterior light fixture. Probation Officer Ray Robinson was nearby, observing for any sign of appellant in the area as prohibited by the no-contact provision of his probation orders. At about 9:15 PM, Robinson observed appellant's vehicle near a laundromat a few blocks from Jeanne's residence. Robinson met with Burrows at a nearby gas station. The two decided to further investigate by having Burrows position his car about two blocks from Jeanne's residence, while allowing Robinson to reconnoiter the area on foot. Burrows was able to observe appellant heading toward the residence. Robinson saw a silhouette in the narrow area between the side of Jeanne's residence and a neighboring house at approximately 9:35 PM. The silhouetted figure, who was indeed appellant, complied with Robinson's directive to hit the ground, and was taken into custody. Burrows later testified that he had seen also appellant on the sidewalk and grass in front of Jeanne's house. Additionally, the state later obtained a letter appellant wrote to his son, in which appellant noted: "Well stupid is as stupid does and I felt very bad for her on 4-28-02 and by 5-1-02 I finely [sic] got the nerve to go peacefully and put her mind at ease. * * *."
 {¶ 7} Appellant was thereafter charged with violating a protection order, R.C. 2919.27. On October 8, 2002, a jury trial was commenced. After the close of evidence, the jury returned a verdict of guilty. Appellant was thereupon sentenced to six months in jail and ordered to pay court costs.
 {¶ 8} Appellant timely appealed, and herein raises the following three Assignments of Error:
 {¶ 9} "I. THE TRIAL COURT COMMITTED HARMFUL ERROR AND ABUSED ITS DISCRETION IN DENYING THE APPELLANT'S REQUEST FOR A CONTINUANCE OF THE JURY TRIAL HEREIN.
 {¶ 10} "II. THE TRIAL COURT COMMITTED HARMFUL AND PLAIN ERROR IN ALLOWING TESTIMONY CONCERNING THE APPELLANT'S STATUS AS A PROBATIONER, UNDER INTENSIVE SUPERVISION, AT THE TIME OF THE ALLEGED OFFENSE.
 {¶ 11} "III. THE FAILURE OF TRIAL COUNSEL TO PROPERLY MAINTAIN OBJECTIONS TO INADMISSIBLE EVIDENCE DENIED THE APPELLANT HIS CONSTITUTIONAL RIGHTS TO THE EFFECTIVE ASSISTANCE OF COUNSEL."
 {¶ 12} As an initial matter, we sua sponte address the issue of potential mootness of an appeal from a misdemeanor conviction. As we recently reiterated in State v. Crandell, Licking App. No. 02CA115,2003-Ohio-2512, "`where a defendant, convicted of a criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction.'" Id., quoting Statev. Wilson (1975), 41 Ohio St.2d 236, 325 N.E.2d 236. See, also, State v.Berndt (1987), 29 Ohio St.3d 3, 504 N.E.2d 712 and State v. Golston
(1994), 71 Ohio St.3d 224, 643 N.E.2d 109. In the case sub judice, no fines were ordered, and appellant's jail sentence was scheduled to have ended on April 4, 2003, prior to the date of oral arguments. However, the record reveals that appellant was ordered to pay court costs and jury fees, which are totaled in a separate document in the trial court jacket as $669.50 as of February 3, 2003. Neither appellant nor the State has shed further light on this issue; therefore, we presume the court costs remain unpaid and that Wilson, supra, does not apply. Hence, we will proceed to the merits of this appeal.
 I. {¶ 13} In his First Assignment of Error, appellant argues the trial court erred in denying his request for a continuance of trial in order to obtain an earlier revocation transcript. We disagree.
 {¶ 14} In State v. Arrington (1975), 42 Ohio St.2d 114, the Ohio Supreme Court held the State must provide an indigent criminal defendant with a transcript of prior proceedings when that transcript is needed for an effective defense or appeal. Id. at paragraph one of the syllabus. Appellant's request for a continuance, made at the start of the trial on October 8, 2002, was based on appellant's desire to utilize a still-unprepared transcript of a probation revocation hearing from another case, which allegedly would show inconsistent testimony by Burrows as to the events of May 1, 2002. The record reveals that appellant's second trial attorney, James Fields, requested said transcript via a written motion on August 30, 2002. The court ordered on September 6, 2002 that "[c]ounsel is granted a copy of the Transcript * * *." The order does not address payment for or the logistics of ordering and receiving the transcript, and was not further pursued by appellant, save his last-minute request to continue. Moreover, the Supreme Court inArrington also held that "[t]he state's burden of showing that a transcript of prior proceedings requested by an indigent defendant is not needed for an effective defense or appeal may be met by the state by a showing that * * * there are alternative devices available to the defendant that would fulfill the same functions as a transcript." Id., at paragraph three of the syllabus. In its response brief, the State notes that a videotape of the revocation hearing in question was made. Our review of the trial transcript portion wherein appellant's counsel argued for a continuance indicates no attempt by appellant to utilize the tape in lieu of a transcript.
 {¶ 15} Furthermore, the grant or denial of a continuance is a matter entrusted to the broad, sound discretion of the trial court. Statev. Unger (1981), 67 Ohio St.2d 65, 423 N.E.2d 1078. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219,450 N.E.2d 1140. In determining whether a trial court abused its discretion in denying a motion for a continuance, an appellate court should consider the following factors: (1) the length of the delay requested; (2) whether other continuances have been requested and received; (3) the inconveniences to witnesses, opposing counsel and the court; (4) whether there is a legitimate reason for the continuance; (5) whether the defendant contributed to the circumstances giving rise to the need for the continuance; and other relevant factors, depending on the unique facts of each case. Unger at 67-68; State v. Holmes (1987),36 Ohio App.3d 44, 47-48.
 {¶ 16} The procedural history of the case sub judice indicates that appellant's first attorney, Mark Ort, filed a motion on May 13, 2002, to determine appellant's competency to stand trial. On May 20, 2002, the court ordered an independent examination of appellant's mental health. On July 22, 2002, an oral competency hearing was conducted. As a result thereof, appellant was found competent to stand trial. In the meantime, on June 21, 2002, Attorney Ort filed a motion to withdraw from representation, noting that appellant was becoming increasingly hostile towards him and had repeatedly urged him to file frivolous motions. On June 24, 2002, the trial court appointed Attorney James Fields to represent appellant. Appellant, via Attorney Fields, filed a jury demand on August 13, 2002. A jury trial was thereupon scheduled for September 24, 2002. However, on said date Attorney Fields also filed a motion to withdraw, citing his firm's prior representation of one of the State's witnesses. Attorney Fields was permitted to withdraw, and the jury trial was re-set for October 8, 2002. Appellant's third attorney, Jeremiah Spires, as hereinbefore recited, then asked for a continuance on October 8, 2002.
 {¶ 17} Upon review of the record, in light of the guidelines inUnger, supra, we are unpersuaded the trial court's denial of another continuance in this matter rose to the level of an abuse of discretion under the facts and circumstances of this case.
 {¶ 18} Appellant's First Assignment of Error is overruled.
 II. {¶ 19} In his Second Assignment of Error, appellant contends the trial court erred in permitting testimony indicative that he was on intensive supervised probation at the time of the offense. We disagree.
 {¶ 20} The admission or exclusion of evidence rests in the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,180. As a general rule, all relevant evidence is admissible. Evid.R. 402. Our task is to look at the totality of the circumstances in the case sub judice, and determine whether the trial court acted unreasonably, arbitrarily or unconscionably in allowing or excluding the disputed evidence. State v. Oman (Feb. 14, 2000), Stark App. No. 1999CA00027, at 2.
 {¶ 21} Evid.R. 404(B) states as follows: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." In the case sub judice, the State concedes that it made reference to Ray Robinson as appellant's intensive supervised probation officer on numerous occasions. However, as the State points out, the jury needed to know under these facts why Robinson was even in a position to be monitoring Jeanne's neighborhood at nine o'clock in the evening. Furthermore, even though this matter stemmed from an underlying CPO, we find the fact that appellant was also under probation restrictions, which likewise required him to keep away from Jeanne, would make his status as a probationer admissible to show lack of mistake or accident regarding his presence in the immediate area on May 1, 2002.
 {¶ 22} Accordingly, appellant's Second Assignment of Error is overruled.
 III. {¶ 23} In his Third Assignment of Error, appellant contends that he was denied the effective assistance of counsel at trial. We disagree.
 {¶ 24} Our standard of review is set forth in Strickland v.Washington (1984), 466 U.S. 668. Ohio adopted this standard in the case of State v. Bradley (1989), 42 Ohio St.3d 136. These cases require a two-pronged analysis in reviewing a claim for ineffective assistance of counsel. First, we must determine whether counsel's assistance was ineffective; whether counsel's performance fell below an objective standard of reasonable representation and was violative of any of his essential duties to the client. If we find ineffective assistance of counsel, we must then determine whether or not the defense was actually prejudiced by counsel's ineffectiveness such that the reliability of the outcome of the trial is suspect. This requires a showing that there is a reasonable probability that but for counsel's unprofessional error, the outcome of the trial would have been different.
 {¶ 25} In support of his argument, appellant focuses on his defense counsel's alleged failure to maintain sufficient objections to the references to his probationer status. However, based on our holding in regard to appellant's Second Assignment of Error, we do not find appellant's trial counsel's performance fell below an objective standard of reasonable representation nor that it was violative of any of his essential duties to his client.
 {¶ 26} Appellant's Third Assignment of Error is overruled.
 {¶ 27} For the reasons stated in the foregoing opinion, the judgment of the Municipal Court of Fairfield County, Ohio, is hereby affirmed.
By: Wise, J., Hoffman, P.J., and Edwards, J., concur.