JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} This cause came to be heard upon the accelerated calendar pursuant to App. R. 11.1 and Loc. R. 11.1, the trial court records and briefs of counsel.
 {¶ 2} Defendant-appellant, Landell Holly, appeals his guilty plea. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the judgment of the lower court.
 {¶ 3} On March 17, 2008, officers from the Cuyahoga Metropolitan Housing Authority ("CMHA") were conducting a safety check of CMHA Outhwaite Estate. CMHA officers observed suspicious activity on the part of appellant, Holly. Holly was told to stop and show the officers his hands. Holly complied and the officers felt a large lump in the upper right front pocket of his jacket.
 {¶ 4} With Holly's permission, an officer removed a plastic sandwich bag from his jacket. The plastic sandwich bag contained fifteen smaller individual bags (22.49 grams) of what was later tested to be marijuana.[1] In addition to the marijuana, officers recovered $871.00 in cash from Holly. The money had been separated into different denominations. Holly was then asked where he works and he stated, "I don't *Page 4 
work anywhere. I just run the streets and do what I need to do."[2]
Appellant was arrested for drug possession and possession of criminal tools.
 {¶ 5} On April 28, 2008, Holly was indicted on two fifth-degree felony charges. Appellant was indicted for drug trafficking with a forfeiture specification and possessing criminal tools, also with a forfeiture specification. Three pretrials were held. On July 31, 2008, the day of the third pre-trial, Holly withdrew his previous plea of not guilty and entered a plea of guilty to count one, drug trafficking, with a forfeiture of $871.00.
 {¶ 6} Holly's possessing criminal tools count was dismissed based on his guilty plea. After entering his plea, Holly's trial attorney requested that he remain out on bond and a presentencing investigation report (PSI) be conducted. The state did not object to the request. The trial court then set the sentencing date for August 28, 2008 at 9:00 a.m. On August 28, 2008, the trial court judge sentenced Holly to a nine-month prison term, and three years of postrelease control. Holly now appeals his guilty plea.
 {¶ 7} Appellant Holly assigns one assignment of error on appeal:
 {¶ 8} [1.] "The Trial Court Erred in Accepting Defendant's Plea of Guilty.
 {¶ 9} Appellant argues that the lower court erred in accepting his plea of guilty to drug trafficking. Specifically, appellant claims that the court erred when it did not *Page 5 
inquire as to the factual basis or information regarding his drug trafficking offense when it was accompanied by his protestation of innocence during his plea hearing.
 {¶ 10} A defendant who attempts to withdraw a guilty plea after sentence has been imposed bears the burden of demonstrating a manifest injustice. State v. Smith (1977), 49 Ohio St.2d 261, 361 N.E.2d 1324. This court has stated that "[a] manifest injustice is defined as a `clear or openly unjust act.' *** `an extraordinary and fundamental flaw in the plea proceeding.' Again, `manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." (Citations omitted.) State v. Sneed, Cuyahoga App. No. 80902, 2002-Ohio-6502.
 {¶ 11} A motion to withdraw a guilty plea after the imposition of sentence may be granted by the trial court only to correct "manifest injustice." Crim. R. 32.1; State v. Xie (1992), 62 Ohio St.3d 521,584 N.E.2d 715; State v. Peterseim (1980), 68 Ohio App.2d 211,428 N.E.2d 863. In turn, this court's review of the trial court's decision on the motion is limited to the issue of whether the trial court abused its discretion. State v. Bayles, Cuyahoga App. No. 85910, 2005-Ohio-6233. The record in this case fails to demonstrate either an abuse of discretion or a manifest miscarriage of justice.
 {¶ 12} As previously stated, Holly argues that the lower court erred because it did not inquire as to the factual basis or information regarding his drug trafficking offense when it was accompanied by a protestation of innocence during his plea hearing. However, Holly's argument is flawed. A review of the transcript *Page 6 
demonstrates that Holly's alleged protestations of innocence were not as clear as initially claimed.
 THE COURT: "And is it true? Did you do it?"
 THE DEFENDANT: "I mean, I wasn't trafficking, but —"
 THE COURT: "Well, did you —"
 THE DEFENDANT: "The truth is, I just got a — — I just got my financial aid check, and I was just going to buy some weed. I got caught."
 THE COURT: "Well, the prosecutor claims that you knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed marijuana in an amount of less than 200 grams, and that you knew or should have known that you or somebody else was going to sell the drug."
 THE DEFENDANT: "I mean, I know it was wrong."[3]
(Emphasis added.)
 {¶ 13} Accordingly, a review of Holly's statements demonstrates that his comments were not protestations of innocence. Holly's statements, "The truth is . . . I was just going to buy some weed. I got caught." and "I mean, I know it was wrong," are not comments that could reasonably be considered to be protestations of innocence by the trial court.
 {¶ 14} Holly stated that he was going to buy some weed, and he got caught. The trial court then specifically reminded Holly that the charge he was about to plead *Page 7 
guilty to was based on the prosecutor's assertions that Holly "knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed marijuana." Immediately after the court reminded Holly of this, he responded, "I mean, I know it was wrong." These statements imply guilt and do not constitute a protestation of innocence on the part of Holly.[4]
 {¶ 15} In addition, a review of the record demonstrates that the lower court complied with all plea requirements. Criminal R. 11(C) provides the following:
 "(2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory *Page 8 
process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
 {¶ 16} The court's obligation under Crim. R. 11 to ensure that the defendant understands the nature of the charge is not a constitutional duty, so the court's compliance with that obligation is subject to review only for substantial compliance. State v. Griggs,103 Ohio St.3d 85, 2004-Ohio-4415, at ¶ 14, 814 N.E.2d 51. The substantial compliance standard requires us to decide whether "the totality of the circumstances indicate that the trial court was warranted in deciding that the defendant did understand the charge." State v. Singh (2000),141 Ohio App.3d 137, 141, 750 N.E.2d 598; also, see, State v.Black, Cuyahoga App. No. 87641, 2006-Ohio-5720, at ¶ 16. Complete failure to comply with a Crim. R. 11(C) requirement will result in a determination that the plea was not knowing, intelligent, and voluntary.State v. Sarkozy, 117 Ohio St.3d 86, 2008-Ohio-509, at ¶ 22,881 N.E.2d 1224; State v. Clark, 119 Ohio St.3d 239, 2008-Ohio-3748,893 N.E.2d 462. Partial non-compliance will not result in reversal unless the defendant was prejudiced. Clark, at ¶ 32.
 {¶ 17} In addition to the fact that Holly's statements were not enough to be considered a protestation of innocence, the totality of the circumstances demonstrates that Holly fully understood the ramifications of pleading guilty to drug trafficking. Further review of the transcript provides the following:
 THE COURT: "Okay. Before I can accept a guilty plea from you, I need to make sure you understand the *Page 9 
consequences of what you're doing, so I have some questions for you. ***."
 * * *
 THE COURT: "Right now-well, I should ask you this, have you ever entered a plea of guilty to any crime in court?"
 THE DEFENDANT: "Yes."
 THE COURT: "All right. And as you stand here right now, are you under the influence of any drugs or alcohol?"
 THE DEFENDANT: "No."
 THE COURT: "If you're tested by the Probation Department today for the presence of drugs in your urine or blood, do you think that drugs will be found."
 THE DEFENDANT: "No."
 THE COURT: "Is there any reason, possibly physical or mental illness, or some other reason, why you wouldn't understand what's going on here today?"
 THE DEFENDANT: "No."
 THE COURT: "And have you understood everything so far?"
 THE DEFENDANT: "Yes."[5]
 {¶ 18} Later, in the hearing the trial court explained to Holly what could happen to him regarding his prior conviction, if he pleads guilty in this case. *Page 10 
 THE COURT: "Are you currently on community control or probation in another case?"
 THE DEFENDANT: "No."
 THE COURT: "Are you on post-release control or parole from prison?"
 THE DEFENDANT: "Parole."
 THE COURT: "Parole or PRC."
 THE DEFENDANT: "PRC."
 THE COURT: "Okay. You need to understand that if you do plead guilty and are convicted in this case, that's probably going to be considered a PRC violation in your other case, and you may have some time, prison time, that is imposed on the other case. Do you understand?"
 THE DEFENDANT: "Yes."
 {¶ 19} In addition, the transcript demonstrates further understanding on the part of Holly when the trial judge inquires as to whether or not Holly is making his plea voluntarily.
 THE COURT: "Other than what has been said today in open court, have any threats or promises been made to you?"
 THE DEFENDANT: "No." *Page 11 
 THE COURT: "Do you realize if you do plead guilty, you will, at a minimum be getting probation, but you can, at a maximum, get 12 months in prison?"
 THE DEFENDANT: "Yes."
 THE COURT: "Mr. Holly, are you pleading guilty of your own free choice?"
 THE DEFENDANT: "Yes."
 THE COURT: "Are you being somehow forced or pressured to do this?"
 THE DEFENDANT: "No sir."
 THE COURT: "And as part of this plea, do you agree to forfeit, that means give up, $871 in U.S. currency, cash basically, that you had with you at the time of your arrest?"
 THE DEFENDANT: "Yes."
 THE COURT: "All right. So you understand you're not getting that back, even if it is as you say, your student loan?"
 THE DEFENDANT: "Yes."
 THE COURT: "Okay. All right. Well, let me ask you then, how do you plead to count 1, drug trafficking, a felony in the fifth degree?"
 THE DEFENDANT: "Guilty."
 THE COURT: "All right. I accept that plea, and based upon that plea, I do find you guilty***"[6] *Page 12 
 {¶ 20} We find the record demonstrates the trial judge conducted extensive questioning of Holly prior to accepting his guilty plea. The judge was very careful to make sure Holly was fully informed and completely understood all ramifications of his guilty plea.
 {¶ 21} Here, both appellant and his attorney stated on the record that the plea agreement was understood and properly set forth. In addition, a review of the evidence demonstrates that the trial court fully complied with Crim. R. 11(C), and appellant voluntarily, knowingly, and intelligently waived his constitutional rights.
 {¶ 22} Accordingly, Holly's sole assignment of error is without merit.
 {¶ 23} The trial court's judgment is affirmed.
It is ordered that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
MARY EILEEN KILBANE, P.J., and ANN DYKE, J., CONCUR.
[1] On March 18, 2008, CMHA officers submitted the fifteen bags found on Holly to the City of Cleveland forensic lab. The fifteen bags (22.49 grams) of green-brown vegetation tested positive for marijuana, a class I drug.
[2] Appellant's brief, p. 1.
[3] Tr. 10.
[4] This court notes that although appellant alludes to having anAlford plea issue here, he does not. Despite protestations of innocence, a defendant can still plead guilty to an offense if the validity of the plea cannot be seriously questioned to be in defendant's best interest in view of a strong factual basis for the plea. North Carolina v.Alford (1970), 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed. 2d 162. Moreover, anAlford plea requires that the defendant state his innocence on the record when entering his plea. Id. citing State v. Murphy (Aug. 31, 1995), Cuyahoga App. No. 68129, unreported. As previously stated, Holly's statements were not statements of innocence.
[5] Tr. 5-6.
[6] Tr. 14-15. *Page 1